**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FORD MOTOR COMPANY,

       Plaintiff,                      CASE NO.  99-CV-73933

-vs-                                          PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

MUSTANGS UNLIMITED, INC.,

       Defendant.
_____/

**OPINION AND ORDER HOLDING DEFENDANT IN CONTEMPT OF THE**
**JUNE 9, 2006 STIPULATED INJUNCTION**

Before the Court is Plaintiff Ford Motor Company's ("Plaintiff") November 29, 2006 Motion for Order to Show Cause Why Defendant Should Not Be Held in Contempt. (Docket No. 44). Defendant Mustangs Unlimited, Inc. ("Defendant") did not file a written response.

The Court held a hearing on Plaintiff's motion on January 30, 2007. At the motion hearing, the Court requested that the parties submit supplemental briefs on the issue of whether Plaintiff's trademark registration covered the use of the trademark on clothing items. Plaintiff filed its brief on February 15, 2007. Defendant filed its Response on February 23, 2007.

At issue for the purposes of this motion is whether Defendant's listing of a T-shirt on its website containing Plaintiff's COUGAR® design mark and then selling that single T-shirt violates this Court's June 9, 2006 Injunction Order Pending Appeal and Stipulated Preliminary Injunction. The Court's Injunction stated, in relevant part:

    1.     Defendant is hereby preliminary enjoined from selling automobile accessories and other merchandise bearing counterfeits or confusingly similar variations of the Ford trademarks, including, but not limited to, the MUSTANG® design mark also known as the RUNNING PONY® design mark, the COUGAR® word mark,

1

       and the COUGAR® design mark. However, Defendant may continue to merchandise and sell genuine Ford products bearing Ford trademarks that Defendant acquire from licensed Ford suppliers.

3.      Within ten (10) days of entry of this Order, Defendant shall deliver to counsel for Ford for destruction all products, labels, tags, signs, prints, and packaging, videos, and advertisements in its possession or under its control, that use in any way Ford trademarks that have not come Ford or a Ford licensed supplier, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Ford trademarks, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118.

On June 19, 2006, Jason Kosofsky, Plaintiff's investigator, purchased a T-shirt from Defendant's website containing Plaintiff's COUGAR® word and design marks. Plaintiff contends that these T-shirts were still advertised for sale, in several sizes, on Defendant's website at least until November 27, 2006. Plaintiff further points out that the T-shirt were printed by Jim Osborn Reproductions, a company that is not licensed by Plaintiff to produce T-shirts with the COUGAR® mark.

Defendant argues, in essence, that Plaintiff's federal registration (No. 2,000,176) only applies to "exterior insignia badges for use on automobiles" and does not extend to the use of the marks on clothing. Defendant contends that 15 U.S.C. § 1116(d)(1)(B)(i), defining "counterfeit marks," only applies to marks "registered on the principal register in the United States Patent and Trademark Office for such goods or services sold." Defendant further maintains that if Plaintiff sought to seek protection for the COUGAR® design mark for clothing, it should have registered the mark under that designation, as Plaintiff had done with its MUSTANG® mark. Finally, Defendant maintains that Plaintiff's arguments about "likelihood of confusion" are irrelevant to the issue of whether the Injunction covered Defendant's T-shirt sale.

Plaintiff argues that Defendant's "registration class" argument is irrelevant to the contempt issue for two reasons: (1) the issue before the Court is a violation of the Injunction, and

not a trademark infringement; and (2) even if this were a trademark infringement issue, the goods classification assigned to Plaintiff's trademark registration is not determinative of the issue of "likelihood of confusion." In support of the second contention, Plaintiff cites MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 19.56, 24:66, 23:76, *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 804 (N.D. Cal. 1987), and *Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473 (D.D.C. 1996).

In order for the Court to hold Defendant in contempt of the June 9, 2006 Injunction, it must find "clear and convincing evidence" that Defendant "violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003).

Initially, the Court notes that Defendant does not dispute that it sold the T-shirt in question to Plaintiff's investigator, after the effective date of the June 9, 2006 Injunction. The question, hence, before the Court is whether the Injunction covers Defendant's conduct.

The Court finds that the language of the Stipulated Injunction enjoined Defendant from selling any merchandise with the COUGAR® word or design mark. The Court rejects Defendant's argument that, in this instance, the Injunction did not apply to uses of the COUGAR® mark not explicitly covered by categories created by the United States Patent and Trademark Office. Courts have held that the internal system of classification within the Patent and Trademark Office does not affect a registrant's substantive rights to that mark. *See Charles Schwab*, 665 F. Supp. at 804 ("The rights of the owner of a registered trademark are not limited to protection with respect to the specific goods stated on the certificate, but extend to any goods related in the minds of a consumer in the sense that a single producer is likely to put out both

3

goods.") (citation omitted); *Taylor Assocs.*, 929 F. Supp. at 476 ("The sole purpose of a classification of goods, however, is for internal administration within the PTO. The class to which a product may be assigned does not limit or extend the registrant's rights and has no bearing on likelihood of confusion.") (citations omitted). To the extent that Defendant is attempting to argue that its use of Plaintiff's trademark is non-infringing in this case, his argument here is misplaced. Defendant clearly used Plaintiff's marks on the T-shirt above a portrayal of Plaintiff's "Cougar" automobile.

Finally, the Court notes that Defendant exhibited to the Court at the hearing a second infringing T-shirt that it had not turned over to Plaintiff.

Accordingly, the Court has found clear and convincing evidence that Defendant is in contempt of the June 9, 2006 Injunction by making available for sale on the internet, and subsequently selling, a T-shirt containing Plaintiff's COUGAR® design mark.

Therefore, the Court **ORDERS** that:

(1) Defendant shall pay Plaintiff's reasonable attorney's fees and costs in connection with the instant motion;

(2) Defendant shall immediately comply with the June 9, 2006 Injunction;

(2) Defendant shall be sanctioned in the amount of $1,000 for violation of the Injunction.

**SO ORDERED.**


        s/Paul D. Borman  
        PAUL D. BORMAN  
        UNITED STATES DISTRICT JUDGE

Dated: March 1, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 1, 2007.

                                          s/Denise Goodine
                                        Case Manager