# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FORD MOTOR COMPANY,

        Plaintiff,                      CASE NO. 99-CV-73933

-vs-                                    PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

MUSTANGS UNLIMITED, INC.,

        Defendant.
_____/

## OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO SET ASIDE CONSENT JUDGMENT

This case is presently on remand from a May 24, 2007 decision of the United States Court of Appeals for the Sixth Circuit. *See Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465 (6th Cir. 2007). In that opinion, the Sixth Circuit reversed this Court's March 1, 2006 Order, and remanded the case to the Court to make an express determination as to whether "extraordinary or exceptional circumstances" existed, under Fed. R. Civ. P. 60(b)(6), to justify the Court's set-aside of the parties' 2002 Consent Judgment.

Upon remand, on June 8, 2007, this Court ordered that the parties submit supplemental briefing on the issues raised by the Sixth Circuit decision. The Court held a hearing on August 16, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Plaintiff's Motion to Set Aside the Consent Judgment. (Doc. No. 25).

**I.    BACKGROUND**

The background of the instant case is recounted by the Sixth Circuit opinion:

> The consent judgment at issue in this case resulted from the parties' voluntary settlement of a federal action in which Ford alleged that Mustangs had committed trademark

1

counterfeiting, trademark infringement, trademark dilution, and unfair competition in violation of the Trademark Act of 1946 (also known as the Lanham Act), 15 U.S.C. §§ 1501-1127, and Michigan law. The consent judgment, which was entered on July 2, 2002, permanently enjoined Mustangs from:

>   (a) advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is not licensed by Ford to distribute or sell such merchandise;
>
>   (b) advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the [Mustang] mark as depicted in two examples in Exhibit A attached hereto; and
>
>   (c) advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing any marks which are confusingly similar to any of the FORD name and marks.

The consent judgment also contained the following provisions:

>   14. Should Ford discover in the future that Mustangs Unlimited is advertising, marketing, distributing, using, selling and/or offering to sell any merchandise which Ford in good faith believes violates the terms of this Consent Judgment, Mustangs Unlimited agrees to cease advertising, marketing, distributing, using, selling and/or offering to sell such merchandise within thirty (30) days of Ford's written notification to Mustangs Unlimited of the violation.
>
>   15. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to use the name "Mustangs Unlimited, Inc." as the name of its business.
>
>   16. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to advertise, market, distribute, sell and/or offer to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is licensed by Ford to distribute or sell such merchandise.

On December 5, 2005, Ford moved in the district court to have the judgment set aside pursuant to Federal Rule of Civil Procedure 60(b)(6), claiming that Mustangs had breached the terms of the judgment by "continu[ing] to sell automobile accessories and other merchandise bearing the Ford Trademarks, including specifically the MUSTANG® design mark, the COUGAR® word mark, and the COUGAR® design mark"; "us[ing] the Ford Trademarks in its advertisements, on its product packaging, and on its Internet website"; and "continuing to make unauthorized use of the Ford

> Trademarks." Ford also alleged that the trademarked Ford products sold by Mustangs are counterfeit-that is, that "the products bear no indication of their source; and . . . . neither the products nor their packaging display the seal of authenticity that must be displayed on genuine Ford products." Ford claimed that it notified Mustangs of the alleged violations but that Mustangs continued to engage in the challenged practices.
>
> In opposition to the motion, Mustangs argued that some of the challenged actions had been orally authorized by Ford during the settlement negotiations; that others were inadvertent and had ceased by the time of the motion hearing; and that Ford had failed to fulfill its duty under the consent judgment to provide Mustangs with notice and thirty days to correct any violations. Mustangs further contended that Ford has not shown that "extraordinary" circumstances justified a grant of the requested relief.
>
> The district court granted Ford's motion and vacated the consent judgment[.]

*Mustangs Unlimited*, 487 F.3d at 466-67 (internal citations omitted).

After Defendant Mustangs Unlimited, Inc. ("Defendant") filed its March 31, 2006 Notice of Appeal, Plaintiff Ford Motor Company ("Plaintiff") filed a motion for a preliminary injunction on May 10, 2006, to enjoin Defendant from using Plaintiff's trademarks during the pendency of the appeal. On June 9, 2006, the parties agreed to a Stipulated Injunction that prevented Defendant from using or counterfeiting Plaintiff's registered trademarks. (Doc. No. 40).

On November 11, 2006, Plaintiff filed a Motion for Order to Show Cause, alleging that Defendant violated the terms of the 2006 Injunction. Defendant did not file a written response to Plaintiff's motion. The Court held a hearing on Plaintiff's motion on January 30, 2007, at which both parties appeared. After entertaining supplemental briefing on an issue raised at the motion hearing, the Court subsequently issued on Order on March 1, 2007, finding Defendant in contempt of the Stipulated Injunction, awarding reasonable attorney's fees and costs to Plaintiff, and sanctioning Defendant in the amount of $1,000.00. *See Ford Motor Co. v. Mustangs Unlimited, Inc.*, No. 99-73933, 2007 WL 675005 (E.D. Mich. Mar. 1, 2007) (unpublished) (Doc. No. 51).

On May 24, 2007, the Sixth Circuit issued its Opinion reversing and remanding this Court's

March 1, 2006 Order.

**II.      ANALYSIS**

The Sixth Circuit reversed this Court's March 1, 2006 Order and remanded to this Court "expressly [to] determine whether – and if so – [Plaintiff's] evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief." *Mustangs Unlimited,* 487 F.3d at 470.

In its discussion of whether a breach of a settlement agreement could justify a set-aside under Rule 60(b)(6), the Sixth Circuit explained:

> "Courts . . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." "The 'something more' . . . . must include unusual and extreme situations where principles of equity *mandate* relief." "There are few cases elaborating on the 'something more' that is required. This may be explained . . . . by the fact that clauses 1-5 of the Rule cover almost every conceivable ground for relief."
>
> Several of our sister circuits have held that a breach of a settlement agreement does not, without more, constitute an exceptional or extraordinary circumstance warranting relief under Rule 60(b)(6). *Compare* 12 MOORE'S FEDERAL PRACTICE § 60.48[3][d] (3d ed.2000) (footnote omitted):
>
>> A number of courts have permitted relief from a judgment entered pursuant to a settlement agreement when, subsequent to the judgment, one of the parties fails to perform according to the terms of the settlement agreement. Relief is not always mandated merely because one party breaches the terms of the settlement agreement, however. If adequate relief is available through a separate lawsuit for breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside.
>
> In *Aro Corp. v. Allied Witan Co.*, we affirmed a district court's grant of relief under Rule 60(b)(6) upon a finding that a settlement agreement had been breached. The *Aro* opinion emphasizes the importance of the general policy favoring the enforcement of settlement agreements[. . . .]
>
>> FN2. Our prior opinion in *L.M. Leathers' Sons v. Goldman*, cited by Ford, is not to the contrary. In *Goldman,* we affirmed a grant of relief from judgment where the record reflected that "[t]he District Court was of the opinion that in the interest of justice the consent judgment . . . . and the accompanying injunction

4

should be set aside *because of the obvious confusion as to the intention of the parties in connection with the stipulation . . . . pursuant to which the judgment was entered.*" In this case, the district court failed to provide *any* rationale for its grant of relief, and, moreover, Ford does not contend that the consent judgment was the product of any confusion on the part of either party.

The Fourth Circuit, in its *Harman* opinion, correctly characterized the *Aro* holding as follows:

> Harman does cite authority holding that when one party repudiates a settlement agreement, the district court has a duty to vacate its prior judgment under Rule 60(b)(6) and proceed to enforce the agreement when justice requires. In [ *Aro* ], two companies had settled a claim of patent infringement and a counterclaim through the issuance of a license. The suit was dismissed voluntarily, but when the licensee subsequently refused to make royalty payments, the licensor moved to have the district court vacate its order of dismissal and enjoin the licensee from future nonpayment. The district court granted the motion. The [S]ixth [C]ircuit, in affirming the district court, stated that "the court below had not only the inherent power but, when required in the interests of justice, the duty to enforce the agreement which had settled the dispute pending before it."
>
> Harman appears to misread the dictum in *Aro*. The [S]ixth [C]ircuit clearly states in that case that a district court has a duty to vacate a prior order of dismissal *when required in the interests of justice, not whenever a settlement agreement has been breached. Aro,* therefore, simply stands for the general rule that when considering a Rule 60(b)(6) motion, the trial judge should use his discretion to determine if the granting of such motion would further justice.

*Mustangs Unlimited*, 487 F.3d at 468-70 (internal citations and footnote omitted) (emphases in original).

Therefore, from the foregoing discussion, this Court must determine whether "extraordinary or exceptional circumstances" exist "in the interests of justice" in this case to set-aside the July 2, 2002 Consent Judgment.

Plaintiff argues that two grounds support "exceptional or extraordinary circumstances": (1) Defendant's essential repudiation of the 2002 Consent Judgment as a result of repeated and serious breaches of the agreement; and (2) Defendant's stated confusion as to the intention of the parties to the settlement agreement (Pl. 2007 Br. 14). Plaintiff maintains that "[w]here the underlying settlement

terms are utterly repudiated, there can be no adequate relief through a direct enforcement proceeding, and vacatur is the only avenue of relief." (*Id*. at 16).

In support of its motion, Plaintiff's supplemental briefing references: (1) the original 2005 evidence produced to this Court for the purposes of Plaintiff's original motion; (2) 2006 evidence that formed the basis of this Court's 2007 Contempt Order; and (3) 2007 evidence of additional violations.

For the purposes of Plaintiff's original December 5, 2005 motion to set aside, Plaintiff produced the following evidence of violations of the Consent Judgment:

(1) The use of the MUSTANG DESIGN mark on Defendant's website;

(2) The use of the COUGAR marks on the fender cover and patch;

(3) The use of the MUSTANG DESIGN mark on packaging; and

(4) The use of the MUSTANG DESIGN and COUGAR DESIGN marks on lapel pins.

(Pl. 2006 Br. Ex. A, Quinlan Decl. ¶ 4; Pl. 2006 Reply Br. 2-3, Ex. A, Cherry Decl. ¶¶ 5-19).

The 2006 evidence consisted of one t-shirt offered for sale on Defendant's website bearing Plaintiff's COUGAR trademark, and a second identical t-shirt in Defendant's possession at the hearing. After holding a hearing on the issue, this Court held Defendant in contempt of the Stipulated Injunction pending the Sixth Circuit appeal. *See Mustangs Unlimited*, 2007 WL 675005, at *2-3.

Finally, Plaintiff's 2007 supplemental brief demonstrates that, as recently as April 2007, Defendant has continued to violate the terms of the Consent Judgment. Plaintiff submits that in March 2007 it discovered that Defendant was advertising and selling on the internet an instrument panel for Plaintiff's Mustang automobiles, bearing Plaintiff's FORD OVAL trademark. (Pl. 2007 Br. Ex. 1A, Kosofsky Decl. ¶¶ 6-7). Plaintiff purchased the instrument panel in question on March 28, 2007; and the records from the purchase indicated that Defendant obtained the panel from Vector Imaging, a company owned by Mr. Scott Cambra. (*Id.*). At his May 2, 2007 deposition, where Defendant was

6

represented by counsel, Cambra testified that that Defendant ordered the instrument panel bearing Plaintiff's trademark from his company between September 2006 and at least January 2007. (Pl. 2007 Br. Ex. 2, Cambra Dep. 17-30). Plaintiff contends that Defendant unlawfully requested that Vector Imaging engrave the instrument panels with several of Plaintiff's trademarks – including MUSTANG, SVT, and FORD OVAL as part of the logo FORD RACING. (*Id*. at 11-30). Cambra also stated that Defendant attempted to purchase seven additional instrument panels on April 13, 2007. (*Id*. at 49-50, 65-67, 73-75; Pl. 2007 Br. Ex. 3, Ryther Decl. ¶¶ 6-7 & Ex. A). Cambra testified that Defendant never inquired whether Vector Imaging was licensed to sell the instrument panels, or whether the company was authorized to engrave Plaintiff's trademarks on those panels. (Cambra Dep. 46-47).

In support of its argument that "extraordinary or exceptional circumstances" exist, Plaintiff states:

> The 2002 Consent Judgment has been repeatedly and continuously repudiated by [Defendant] for the entire five years since it was entered. The 2002 Consent Judgment is simply not a viable mechanism for protecting Ford's rights. This is truly an extraordinary case in which [Plaintiff] has no adequate means of protecting its rights through mere enforcement proceedings. Thus, [Plaintiff] has been completely deprived of the benefit of the bargain that resulted from the entry of the 2002 Consent Judgment. Consequently, [Plaintiff] should be given the opportunity to secure further protections of its rights after a vacatur of the 2002 Consent Judgment.

(Pl. 2007 Br. 17).

Further, Plaintiff indicates that it wishes to seek an additional relief not specified by the Consent Judgment – namely, that Defendant should not be allowed to use the business name "Mustangs Unlimited." Plaintiff contends that "[t]his was a huge concession on [Plaintiff's] part. . . . [and that Plaintiff] agreed to the business name 'Mustangs Unlimited' on the understanding that [Defendant] would not sell infringing merchandise." (*Id*. at 17-18).

7

Plaintiff cites the additional ground of "confusion as to the intention of the parties" to support a set-aside. Plaintiff contends that the following operate to demonstrate Defendant's "confusion" as to the operation of the Consent Judgment: (1) Defendant's purported misunderstanding of ¶¶ 13-14 of the Consent Judgment that Plaintiff's communication in writing as to violations was a precondition to comply; (2) Defendant's contention that it could avoid violating the agreement if it "reasonably," but erroneously, believed that a vendor, from whom it purchased inventory, was licensed; and (3) Defendant's understanding that could sell off any remaining infringing products in its inventory after the 2002 dismissal of the case.

Finally, Plaintiff contends that it would not obtain "adequate relief" through a collateral proceeding to the enforce the terms of the Consent Judgment:

> [Defendant] has shown that it will take every opportunity to flout this Court's authority, to repudiate the Court's injunctions, and to profess confusion when caught in a violation. That pattern will certainly continue without some additional protection of [Plaintiff's] rights. [Defendant's] counterfeiting will undoubtedly continue. . . .

(*Id*. at 20).

In response, Defendant requests that this Court should conduct an evidentiary hearing on Plaintiff's allegations, before ruling on whether Plaintiff is entitled to a set-aside under Rule 60(b)(6). Defendant additionally attempts to rebut Plaintiff's specific allegations about the alleged violations of the Consent Judgment by arguing the following: (1) Plaintiff's true motivation behind its motion to set-aside is to prevent Defendant from using its business name "Mustangs Unlimited"; (2) Plaintiff's evidence of violations of the Consent Judgment presented at the February 2006 hearing are either "nonexistent" or "explainable"; and (3) Plaintiff failed to comply with the Consent Judgment's notice requirement under ¶ 14.

With regard to the 2005 evidence, Defendant has not rebutted Plaintiff's evidence that the

infringing/counterfeit items were inventoried and offered for sale by Defendant – but rather tries to justify its conduct. Initially, there is no support for Defendant's allegations that Plaintiff's motion is simply a façade for its attempt to prevent Defendant from using the "Mustangs Unlimited" business name. Defendant contends: (1) that Plaintiff did not comply with the Consent Judgment's "notice" provision in ¶ 14 before bringing suit; (2) that Defendant believed, erroneously, that certain items that it carried in inventory were purchased from licensed vendors; and (3) that the Consent Judgment permitted Defendant to sell "any remaining inventory that was not purchased from a Ford licensed vendor as long as [Defendant] obtained new products from [Plaintiff's] licensed vendors."

With regard to the fender covers and patches, Defendant states that there was a "latent ambiguity" in the agreement – or an understanding between the parties that "existing inventory" (here the fender covers and patches) was not subject to the terms of the Consent Judgment. (Def. Br. Ex. 1, Letendre Aff. ¶ 11). Plaintiff sharply disputes that the parties ever made that kind of ancillary agreement outside of the Consent Judgment's clear terms. The 2002 Consent Judgment, on its face, makes no such exception that Defendant could sell the infringing products that existed in its inventory before 2002.

Defendant argues that the lapel pins and license plates were all purchased, on belief, from a licensed Plaintiff vendor. (Letendre Aff. ¶ 12). However, Defendant admits that it was unable to verify if the supplier of the lapel pins was licensed. Additionally, the license plate Defendant purchased from Jim Osborn was not a licensed product. (Def. Reply Kosofsky Decl. ¶ 4-8).

The Court has already found that the 2006 evidence of the COUGAR t-shirt violated the terms of the Stipulated Injunction.

Finally, Defendant, who was represented by counsel at Cambra's deposition, does not offer any substantive evidence to rebut Plaintiff's 2007 instrument panel evidence. Defendant merely makes the

9

conclusory assertion that "some of Mr. Cambr[a]'s testimony was actually false, and it is not clear how much of his testimony can be relied upon by the Court." (Def. 2007 Br. 7). This statement does not suffice to rebut Plaintiff's evidence on this issue.

Turning to the question of whether "extraordinary or exceptional circumstances" exist under Rule 60(b)(6), the Court initially notes two Sixth Circuit decisions, prior to *Mustangs Unlimited*, that discussed Rule 60(b)(6) motions in relation to alleged breaches of settlement agreements.

In *Aro Corporation v. Allied Witan Company*, 531 F.2d 1368 (6th Cir. 1976), the parties entered a settlement agreement that granted the defendant a patent license. Almost immediately after the case was dismissed without prejudice, the defendant questioned whether the plaintiff had notified the other licensees of the defendant's license. *Id*. at 1370. As a result, the defendant refused to pay the agreed-upon royalties to the plaintiff. *Id*. The Sixth Circuit affirmed the district court's set-aside under Rule 60(b)(6), stating:

> [The defendant's] *attempted repudiation* of the agreement on which the dismissal rested constituted full justification therefor. The court below had not only the inherent power but, when required in the *interests of justice*, the duty to enforce the agreement that had settled the dispute pending before it.

*Id*. at 1371 (emphases added).

In *L.M. Leathers' Sons v. Goldman*, 252 F.2d 188 (6th Cir. 1958), a case that involved a patent license, the appellant and the appellee entered into a stipulated consent judgment, where appellant would grant appellee a free, non-exclusive, irrevocable license in return for appellee's dismissal of its declaratory judgment counterclaim. *Id*. at 189. A few days after the consent judgment was entered, an injunction was issued pursuant to that judgment. *Id*. However, the appellant never provided a license for the appellee. *Id*. The appellant subsequently brought suit against the appellee, claiming that the appellee was not a licensee and that the appellee had violated the injunction. *Id*. The court held:

> [T]he action taken by the [d]istrict [court] was more in furtherance of justice between the parties than that urged upon us by appellant. The entry of the consent judgment was obtained by the promise that it would grant appellee a free license. The refusal on the part of the appellant to carry out its part of the contract by which the judgment was obtained fully justified the Court in taking appropriate action to restore the parties to their status quo prior to the execution of the agreement. Such action lies in the discretion of the district court.

*Id*. at 190 (internal citations omitted).

The Sixth Circuit in *Mustangs Unlimited* adopted the Fourth Circuit's characterization of *Aro*, stating that "a district court has a duty to vacate a prior order of dismissal when required in the interests of justice, not whenever a settlement agreement has been breached. . . . [T]he [trial judge] should use his discretion to determine if granting a [Rule 60(b)(6) motion] would further justice." *Mustangs Unlimited*, 487 F.3d at 470 (quoting *Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir. 1982)).

In this instance, the Court finds sufficient evidence in the record to justify setting aside the 2002 Consent Judgment under Rule 60(b)(6).

Initially, Defendant's arguments exhibit a certain amount of confusion to the operation of the Consent Judgment. It was apparently unclear to Defendant, whether Plaintiff was bound to police the Consent Judgment; whether under its terms Defendant could avoid violating the agreement if it "reasonably," but erroneously, believed that a vendor, from whom it purchased inventory, was licensed; and finally whether Defendant could sell off infringing products that remained in its inventory after the 2002 dismissal of the case.

Furthermore, the Court has found Plaintiff's evidence from 2005, 2006, and 2007 of continuing violations of the Consent Judgment to be credible. Defendant's substantial and continuing disregard for the bargain struck between the parties to resolve this case necessitates a set-aside of the Consent Judgment to advance "the interests of justice" in this instance.

Finally, the Court does not find that it necessary to hold an evidentiary hearing on Plaintiff's motion. "Evidentiary hearings are not necessary where the parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Gonzales v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998). In this case, there has been extensive briefing by the parties in 2006, and in 2007 after the Sixth Circuit's remand. Both parties have had ample opportunity to submit numerous declarations and other documentary evidence to support their positions, and have done so. Therefore, the Court does not believe that an evidentiary hearing is necessary to decide Plaintiff's motion to set-aside the judgment.

It is clear to this Court, that given Defendant's admitted confusion over the Consent Judgment's terms, combined with Plaintiff's substantial evidence of violations that the Consent Judgment document is not, and has not been, a harmonious or effective resolution of the instant case. The Court agrees with Plaintiff that Defendant's post-2002 conduct, and subsequent post-hoc excuses for non-compliance, essentially amount to a repudiation of important terms of the Consent Agreement. *See Aro*, 531 F.2d at 1371. The Court finds that adequate "exceptional or extraordinary circumstances" exist "in the interests of justice" to set-aside the 2002 Consent Judgment under Rule 60(b)(6), and permits Plaintiff to obtain adequate relief by proceeding with the instant case, or through filing a new lawsuit.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Set Aside the Consent Judgment. (Doc. No. 25).

**SO ORDERED.**

s/Paul D. Borman

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 7, 2007.

s/Denise Goodine
Case Manager